Dear Mr. Auderer:
Our office is in receipt of your request for an Attorney General's opinion concerning the overcrowding of its school. I have been assigned to handle your request.
You indicated that your board adopted a new policy on December 16, 2003, that addresses this concern. You have indicated that one school particularly affected by the new policy is Andrew Jackson High School, a magnet school with open admission to all parish residents. You also indicated that Andrew Jackson currently enrolls 1265 students; however, it best serves a population of 900 — 1000.
Additionally, you have stated the following:
 The administration's plan to address accountability concerns, overcrowding concerns, and school enrollment caps was presented in November. Discussion was tabled until the committee meeting in December. At the December 9 committee meeting, the issue was discussed, approximately 10 audience members requested to and were allowed to address the Board, and the issue was sent to the full Board's attention without a recommendation. The Board discussed the issue again at the December 16 meeting, following a time where approximately 20 audience members addressed the issue and a new policy was adopted 11 — 0.
 Included in the policy is the provision for selecting students if more students request to attend the magnet (open admissions) or district school than the cap would allow. All students who are parish residents would have the opportunity to request a first and second school of their choice. Those students' names would be put in a hopper, and names would be pulled for the number of slots available within the caps. Students not able to attend their first choice school would then be assigned to their second choice school.
You seek an Attorney General opinion concerning the following:
 1) Did the public have adequate input and knowledge of the plan?
2) Is our selection process within the law?
 3) Does the law allow us to select students designated as gifted or special education separately from the general population of students? These students would be selected from a pool exclusively of gifted or special education students.
Title 42 deals with "Open Meetings." Specifically, LSA-R.S. 42:7
addresses notice of meetings. It sets forth the following requirements:
§ 7. Notice of meetings
 A. (1)(a) All public bodies, except the legislature and its committees and subcommittees, shall give written public notice of their regular meetings if established by law, resolution, or ordinance, at the beginning of each calendar year. Such notice shall include the dates, times, and places of such meetings.
 (b)(i) All public bodies, except the legislature and its committees and subcommittees, shall give written public notice of any regular, special, or rescheduled meeting no later than twenty-four hours before the meeting.
 (ii) Such notice shall include the agenda, date, time, and place of the meeting, provided that upon approval of two-thirds of the members present at a meeting of a public body, the public body may take up a matter not on the agenda.
* * *
LSA-R.S. 42:6.1 sets forth exceptions to open meetings. It does not appear that this subject matter would be an exception pursuant to 42:6.1.
LSA-R.S. 42:5.1 provides the following concerning public comments at school board meetings:
 Notwithstanding any other law to the contrary, each school board subject to the provisions of this Chapter shall allow public comment at any meeting of the school board prior to taking any vote. The comment period shall be for each agenda item and shall precede each agenda item. A comment period for all comments at the beginning of a meeting shall not suffice as a comment period.
The information submitted to our office does not indicate whether notice of the November and December meetings was given pursuant to LSA-R.S. 42:7. You stated that approximately ten audience members requested to and were allowed to address the committee at a meeting. Subsequently, at a board meeting twenty audience members addressed the issue prior to the adoption of the policy. In response to your first question, provided notice was given pursuant to LSA-R.S. 42:7 and LSA-R.S. 42:5.1 was complied with, it appears that the public had an adequate opportunity to ask questions and discuss the plan.
I will address your second and third questions together. Let me begin by saying that I spoke with a representative from your office who informed me that the St. Bernard Parish School Board is not subject to a federal desegregation consent decree. Furthermore, I was told that approximately ten percent of the student population in your district is minority. Therefore, there are no existing court mandates regarding minority students.
Additionally, you have indicated that the magnet school in your district is not an academic magnet school but has open admissions. As indicated in a letter sent to the eighth grade parents, the St. Bernard Parish School Board capped the enrollment for each of the three high schools as well as the enrollment at all public middle and elementary schools for the 2004 — 2005 school year. All students that are currently enrolled at a high school (current ninth, tenth, and eleventh grades) were allowed to stay at that school regardless of whether the school had exceeded its cap. The enrollment for incoming ninth graders for the 2004 — 2005 school year is limited.
The current eighth grade students were given an opportunity to designate a first and second choice for school assignments in 2004-2005. There was a deadline for turning in all designation forms. The students had an opportunity to designate either their district school or the magnet school (Andrew Jackson High School) as their first or second choice.
If more students either elect their district school or Andrew Jackson than the caps allowed, the students were to be assigned to schools on the basis of a random selection process to be conducted by the three high school principals. Letters designating school assignments were to be mailed to students on January 27, 2004. School assignments for the 2004 — 2005 session were to be final unless additional openings occurred, moving that school's enrollment below the cap. If that occurred, students who did not receive their first choice originally were to have the opportunity to change school assignments in the order designated in the random selection.
From the information presented, it appears that the lottery would involve a completely random selection of students from the general pool of students and a separate random selection of students who qualify as children with exceptionalities, including special education and gifted students.
LSA-R.S. 17:104 sets forth the authority and responsibility of local school boards in the assignment of pupils to schools within their jurisdiction, and the factors to be considered. It states the following:
 Subject to appeal in the limited respect herein provided, each local board shall have full and final authority and responsibility for the assignment, transfer and continuance of all pupils among and within the public schools within its jurisdiction, and shall prescribe rules and regulations pertaining to those functions. Subject to review by the board as provided herein, the board may exercise this responsibility directly or may delegate its authority to the superintendent of education or other person or persons employed by the board. In the assignment, transfer or continuance of pupils among and within the schools, or within the classroom and other facilities thereof, in accordance with such rules and regulations, the following factors and the effect or results thereof shall be considered, with respect to the individual pupil, as well as other relevant matters: Available room and teaching capacity in the various schools; the availability of transportation facilities; the effect of the admission of new pupils upon established or proposed academic programs; the suitability of established curricula for particular pupils; the adequacy of the pupil's academic preparation for admission to a particular school and curriculum; the scholastic aptitude and relative intelligence or mental energy or ability of the pupil; the psychological qualification of the pupil for the type of teaching and associations involved; the effect of admission of the pupil upon the academic progress of other students in a particular school or facility thereof; the effect of admission upon prevailing academic standards at a particular school; the psychological effect upon the pupil of attendance at a particular school; the possibility or threat of friction or disorder among pupils or others; the possibility of breaches of the peace or ill will or economic retaliation within the community; the home environment of the pupil; the maintenance of severance established social and psychological relationships with other pupils and with teachers; the choice and interests of the pupil; the morals, conduct, health and personal standards of the pupil; the request or consent of parents or guardians and the reasons assigned therefor.
 Local school boards may require the assignment of pupils to any or all schools within their jurisdiction on the basis of sex, but assignments of pupils of the same sex among schools reserved for that sex shall be made in the light of the other factors herein set forth.
LSA-R.S. 17:111 prohibits discrimination in public schools. It states the following:
 A. No person shall be refused admission into or be excluded from any public school in the state of Louisiana on account of race, creed, color, disability, as defined in R.S. 51:2232(11), or national origin.
 B. Except with the express approval of a board of education or school board having jurisdiction, a majority of the members of such board having been elected, no student shall be assigned or compelled to attend any school on account of race, creed, color or national origin, or for the purpose of achieving equality in attendance or increased attendance or reduced attendance, at any school, of persons of one or more particular races, creeds, colors or national origins, and no school district, school zone, or attendance unit, by whatever name known, shall be established, reorganized or maintained for any such purpose, provided that nothing contained in this section shall prevent the assignment of a pupil in the manner requested or authorized by his parents or guardian, and provided further that nothing in this Act shall be deemed to affect, in any way, the right of a religious or denominational educational institution to select its pupils exclusively or primarily from members of such religion or denomination or from giving preference to such selection to such members or to make such selection to its pupils as is calculated to promote the religious principle for which it is established.
Additionally, LSA-R.S. 17:151 sets forth the general provisions for the establishment of public schools by parish boards. It states the following in pertinent part:
 Parish and city school boards may establish such public schools as they may deem necessary to provide adequate school facilities for the children of the parish, and also trade schools, evening schools, schools for adults, schools and classes for exceptional children, and such other schools or classes as may be necessary to meet all special or exceptional requirements. Central or high schools may be established when necessary, but no high school shall be established without the sanction of the State Board of Elementary and Secondary Education by the public school officials, and the State Board of Elementary and Secondary Education may extend special financial aid to schools meeting required standards in such courses, with such funds as may be available for such purposes.
Also, on a federal level, the requirements located in the Individuals with Disabilities Act (IDEA) must be complied with as well. This statute is located in 20 U.S.C. § 1400 et seq. Of the many requirements for the local school boards is Section 1412(a)(5) of the Act which requires a child to be placed in the least restrictive environment. It states:
 To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.
In Oberti by Oberti v. Board of Education of Borough of ClementonSchool District, 789 F. Supp. 1322, the court held that IDEA imposes affirmative obligations on school districts to consider placing disabled children in regular classroom settings with use of supplementary aids and services, before exploring other alternative placements. IDEA incorporates "least restrictive environment requirements."
In response to your second question, it is the opinion of this office that the authority granted to school boards in LSA-R.S. 17:104 permits the St. Bernard Parish School Board to assign students as set forth in the policy described herein, including the use of a lottery. In response to your third question, the law does not appear to prohibit the use of a separate lottery for gifted students and students with exceptionalities, if implemented in furtherance of the factors to be considered in LSA-R.S. 17:104 and the mandates set forth in 20 U.S.C. § 1400 et seq. In the implementation of any lottery, federal laws, state laws, and regulations established by the Department of Education, must be complied with.
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance please let me know.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: _____________________________ Beth Conrad Robinson Assistant Attorney General
CCF, Jr.:BCR:sc